## LEVI STOCKTON v. STATE.

No. A-4868.  Opinion Filed July 18, 1925.
(238 Pac. 508.)

A. E. Darnell, for plaintiff in error.

The Attorney General and Chas. Hill Johns, Asst. Atty. Gen., for the State.

BESSEY, P. J.  Plaintiff in error, Levi Stockton, here referred to as the defendant, was by verdict of a jury found guilty of conjoint robbery, with his punishment assessed at confinement in the state penitentiary for a term of 6 years.

The testimony shows:

That James A. Scott, a farmer who had lived in Custer county for 22 years, was driving along the highway in an automobile on the night of August 11, 1922, at a point between Dripping Springs and Weatherford, in company with another man and three women.  That as they drove down to a bridge they saw a car standing, with some tools in the highway beside it, in such manner that Scott could not drive onto the bridge.  Scott and his companions were therefore forced to stop at this point, and one of the two men from the other car, holding the muzzle of a

Winchester against Scott's body, commanded him to "put 'em high." All of the occupants of the Scott car got out of the car, and the two highwaymen took from Scott 85 cents in money, a German iron cross, a pocket knife, some cigarettes, and other articles. Scott made no resistance, because he was in fear of being shot by the highwaymen. The highwaymen were not identified at this place because one of them had a red handkerchief over his face and the other a blue handkerchief.

While these incidents were occurring, an automobile approached, and the robbers directed Scott and his companions to push the Ford roadster, which was standing in the middle of the road, up the hill in order to let the other car pass. They were then directed to get into their car and drive on. Scott drove on to a farmhouse and notified the sheriff, after which, in company with two farmers, he returned to the place where he was held up. Two men driving a roadster (not a Ford) passed them, and the driver stated that he had found a pocket book in the road and at about the spot where the robbery had occurred, and asked Scott and the two farmers if the pocketbook belonged to them. They then went down the road about a mile and a half and found an old Ford roadster overturned in a ditch by the side of the road. Scott and the others identified the roadster in the ditch as being the one, or similar to it, in possession of the highwaymen at the point where the robbery occurred. The car was described as being a Ford roadster with an old body, but with new fenders, that the top was down, and that the headlights were of the type usually found on a Maxwell car. The car in the ditch was further identified as being the one which had been in possession of the highwaymen by the tracks and treads of the tires. The car that approached when the robbery was taking place was driven by a banker from Weatherford, who corroborated the other witnesses with reference to their pushing the car up the hill, and

to the attending circumstances. He also testified about the car being found in the ditch, and that it was his judgment that the car in the ditch was the same car he had seen at the bridge some few minutes earlier.

The defendant himself claimed the car in the ditch. The sheriff of Custer county testified: That he went to the place where a Ford roadster was wrecked and found a hat and a handkerchief in the road near the Ford car. That he then proceeded to the defendant's home where he found the defendant in bed. That he found a blue bandanna handkerchief in the defendant's room. That while the defendant was dressing he inquired of the sheriff as to the cause of his arrest, and that the sheriff replied that it was on account of "this deal out east here." Presently the defendant said, "What is it?" The sheriff answered, "Levi, I have your car that was wrecked out here, and I see your knee is skinned." After some further conversation the sheriff said, "Where are the guns?" and the defendant replied, "The other fellows has got them." The sheriff then wanted to know who they were, and defendant replied, "All I know is 'Blackie,' and if you want the other fellow you better hurry, because he is leaving." There were many other circumstances tending to explain the transactions, but for the sake of brevity they will be omitted.

As indicated by the verdict, the jury believed that the identification of the defendant was sufficient, and from a perusal of the evidence this court believes that the jury were justified in this regard.

The defendant did not take the witness stand, or make any explanation of his whereabouts on the night in question, or his connection with the affair, but rested his case after he had introduced several witnesses whose testimony indicated that his reputation as a law-abiding citizen was good.

A defendant, if he so elects, may refrain from taking the witness stand in his own behalf, and require the state to overcome his presumption of innocence, but in cases where the circumstances point so conclusively to the guilt of the defendant, as is shown in this case, the defendant, not as a matter of law, but as a matter of expediency, had better make some explanation or be prepared to take the consequences.

No exceptions were taken to the instructions of the court, and no instructions were proffered by the defendant. The instructions given fairly covered the law of the case.

The claim that the court erred in admitting the statements made by the defendant, as testified to by the sheriff, is untenable. There is no showing that these statements were obtained by force, fear, or any character of duress.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.